UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SANDRA G. SHAFFER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant. | No. CV-09-0046-CI<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DENYING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 16.) Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Terrye E. Shea represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, and remands the matter to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

## JURISDICTION

On June 5, 2006, Sandra G. Shaffer (Plaintiff) protectively filed applications for Disability Insurance benefits (DIB) and Social Security Income (SSI) benefits. (Tr. 15.) Plaintiff alleged disability due to mental health issues of depression, anxiety, and bi-polar disorder with an alleged onset date of July 12, 2004. (Tr. 116, 131.) Benefits were denied initially and on reconsideration.

Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Hayward Reed on August 8, 2007. (Tr. 25-81.) Plaintiff, who was represented by counsel, testified. In addition, medical expert Scott Mabel, Ph.D.; vocational expert Fred Cutler (VE); and Plaintiff's long time friend, Donna Holt testified. (Tr. 25.) The ALJ denied benefits on January 15, 2008, and the Appeals Council denied review. (Tr. 4-6, 15-28.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. Plaintiff was 55 years old at the time of the hearing. (Tr. 50.) She was married with adult children. She had obtained sufficient college credits for a bachelor's degree by taking on-line classes for about 20 years. (Tr. 50, 64.) Plaintiff has past work experience as an adult caregiver, home health aide, psychiatric aide, and child monitor, estate executrix. (Tr. 186.) She testified she could no longer work because of unpredictable and extended episodes of fatigue, anxiety and depression. (Tr. 50-52.)

**ADMINISTRATIVE DECISION**

ALJ Reed found Plaintiff met insured status requirements for DIB benefits through March 31, 2009. (Tr. 15.) At step one, he found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2004. (*Id.*) At step two, he found Plaintiff had the severe impairments degenerative disk disease, depression and anxiety, and non-severe impairments of "Epstein-Warre virus, hip pain, hypothyroid, mild hypertension, TMJ,

1   and bilateral high frequency hearing loss." (Tr. 17-18.)  He noted
2   that although there was objective medical evidence of severe
3   impairment of the cervical spine, "there is no evidence of follow-up
4   treatment by her treating physician or specialist," and it was
5   "impossible to determine the effect of this impairment on the
6   claimant's residual functional capacity." (Tr. 18.)  The ALJ did
7   not consider the cervical spine impairment in his RFC determination.
8   (*Id.*)

9       At step three, ALJ Reed found Plaintiff's impairments, alone or
10  in combination, did not meet or medically equal an administratively
11  recognized level impairment listed in Appendix 1, Subpart P,
12  Regulations No. 4 (Listings). (*Id.*)  ALJ Reed determined Plaintiff
13  had the residual functional capacity (RFC) to perform a full range
14  of work at all exertional levels, with the following non-exertional
15  limitations: she "is moderately limited in her ability to work in
16  coordination with or proximity to others without being distracted by
17  them;" she "may exhibit behavior extremes" and "she would be able to
18  work with the general public on a brief basis." (Tr. 19.)  The ALJ
19  found Plaintiff's statements regarding the intensity of her symptoms
20  were not entirely credible.  (Tr. 20.)  At step four, after
21  considering the VE's testimony, the ALJ found Plaintiff could still
22  perform her past work as a home health aide and child monitor.  He
23  concluded she was not "disabled," as defined by the Social Security
24  Act, during the alleged period of disability.  (Tr. 23.)

**STANDARD OF REVIEW**

25
26      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the
27  court set out the standard of review:
28

A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1   disability, an ALJ must apply a five-step sequential
    inquiry addressing both components of the definition,
2   until a question is answered affirmatively or negatively
    in such a way that an ultimate determination can be made.
3   20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
    claimant bears the burden of proving that [s]he is
4   disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
    1999). This requires the presentation of "complete and
5   detailed objective medical reports of h[is] condition from
    licensed medical professionals." *Id.* (citing 20 C.F.R. §§
6   404.1512(a)-(b), 404.1513(d)).

7        It is the role of the trier of fact, not this court, to resolve

8   conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence

9   supports more than one rational interpretation, the court may not

10  substitute its judgment for that of the Commissioner. *Tackett*, 180

11  F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

12  Nevertheless, a decision supported by substantial evidence will

13  still be set aside if the proper legal standards were not applied in

14  weighing the evidence and making the decision. *Brawner v. Secretary*

15  *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If

16  there is substantial evidence to support the administrative

17  findings, or if there is conflicting evidence that will support a

18  finding of either disability or non-disability, the finding of the

19  Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

20  1230 (9th Cir. 1987).

21                              **ISSUES**

22       The question is whether the ALJ's decision is supported by

23  substantial evidence and free of legal error. Plaintiff argues the

24  ALJ erred when he (1) failed to provide specific and legitimate

25  reasons for rejecting her examining psychologist's opinions, (2)

26  improperly relied on the non-examining medical expert's opinion, and

27  (3) improperly disregarded opinions from her mental health

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

1  providers.  She further contends the ALJ's mental RFC findings were

2  not supported by the evidence. (Ct. Rec. 14.)

3                          **DISCUSSION**

4  **A.   Evaluation of Acceptable Medical Source Opinions**

5       Plaintiff argues the ALJ improperly rejected the medical

6  opinions of examining psychologist Kayleen Islam-Zwart, Ph.D., who

7  examined Plaintiff in July 2006.  She contends that mental

8  limitations assessed by Dr.  Islam-Zwart, if properly credited,

9  would support a finding of disability.  (Ct. Rec. 14 at 15-17.)

10      In disability proceedings, an examining physician or

11  psychologist's opinion is given more weight than that of a non-

12  examining physician.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th

13  Cir. 2004).   If an examining psychologist's opinion is not

14  contradicted, it can be rejected only with "clear and convincing"

15  reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When

16  rejecting conflicting examining or treating medical source opinions,

17  the ALJ must "make findings setting forth specific, legitimate

18  reasons for doing so that are based on substantial evidence in the

19  record." *Sprague*, 812 F.2d at 1230; *see also Flaten v. Secretary of*

20  *Health and Human Services*, 44 F.3d 1453, 1463 (9th Cir. 1995).

21      To meet this burden, the ALJ can set out "a detailed and

22  thorough summary of the facts and conflicting clinical evidence,

23  stating his interpretation thereof, and making findings." *Cotton v.*

24  *Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  Historically, the

25  courts have recognized conflicting medical evidence, the absence of

26  regular medical treatment during the alleged period of disability,

27  and the lack of medical support for doctors' reports based

28  substantially on a claimant's subjective complaints, as specific,

legitimate reasons for disregarding an examining physician's opinion. *Flaten*, 44 F.3d at 1463-64; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

On July 31, 2006, Dr. Islam-Zwart evaluated Plaintiff based on an interview and the results of the following objective psychological tests: Mental Status Examination; Trails A and B; Fifteen Item Memory Test; and the Personality Assessment Inventory. (Tr. 263-64.)  The results were interpreted in Dr. Islam-Zwart's narrative report, and summarized in a psychological/psychiatric report form.  (Tr. 258-61.)  Based on the interview and objective data collected, moderate severity was assessed in these categories: depressed mood; verbal expression of anxiety/fear; and global illness.  (Tr. 259.)  Dr. Islam-Zwart did not find evidence of malingering or invalid test results.  (Tr. 264.)  She assessed moderate functional limitations in Plaintiff's ability to exercise judgment and make decisions; relate appropriately to co-workers and supervisors; interact appropriately in public contacts; care for personal hygiene and appearance; and control motor movements and maintain appropriate behavior.  (Tr. 260.)  She also found Plaintiff had marked limitations in her ability to respond and tolerate pressures of a normal work setting.  (*Id.*)

The ALJ briefly discussed Dr. Islam's Zwart's report, and gave it "little weight" because it was prepared for another agency.  (Tr. 22.)  However, "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."  *Lester*, 81 F.3d at 832.  Further, the ALJ's reasoning that Dr. Islam-Zwart's opinions do not merit "controlling weight," is not sufficiently

specific to reject her entire assessment.[1]  While it is true that an ALJ need not accept medical opinions that are brief, conclusory and unsupported by clinical findings, *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002), Dr. Islam-Zwart's findings are explained in a narrative report and supported by objective testing; therefore, the ALJ must explain with specificity which opinions he is rejecting and give legitimate reasons, supported by the record, for doing so. *See, e.g. Flaten*, 44 F.3d at 1463-64 (listing specific and legitimate reasons for disregarding examining doctors' opinions). Finally, the GAF [2] score of 60, cited by the ALJ as inconsistent with claims of a complete inability to work (Tr. 22), is consistent with the unrejected, moderate limitations assessed by Dr. Islam-Zwart and consistent with Plaintiff's subjective complaints throughout the record. (*See, e.g.,* Tr. 233, 241-42, 262-63, 275, 358, 360.)  The fact that a GAF score assessed at the time of examination does not support a finding of total disability does not warrant total

---

[1] Although the ALJ found Plaintiff's statements regarding the severity and intensity of her symptoms "not entirely credible," he did not reject her statements entirely.  (Tr. 20.)

[2] The Global Assessment of Functioning (GAF) scale is a common tool for tracking and evaluating the overall psychological functioning of a patient.  A score of 51-60 indicates "moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job.)" DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

rejection of Dr. Islam-Zwart's opinions regarding Plaintiff's non-exertional limitations. The ALJ erred in his rejection of Dr. Islam-Zwart's evaluation.

Plaintiff also contends the ALJ erred in relying on medical expert Dr. Mabel's testimony. (Ct. Rec. 14 at 15.) The analysis and opinion of a non-examining medical expert selected by the ALJ may be helpful in his adjudication. *Andrews,* 53 F.3d at 1041. However, medical expert testimony may serve as substantial evidence only when supported by other competent evidence in the record. *Id.* The opinion of a non-examining medical source "cannot by itself constitute substantial evidence" sufficient to reject the opinion of an examining medical source. *Lester*, 81 F.3d at 831.

Here, Dr. Mabel opined that Plaintiff suffered from depression and anxiety that caused mild to moderate limitation in concentration persistence, and pace, and her primary difficulty would be interacting with co-workers. He also opined Plaintiff would not have problems working with the general public "for brief periods of time." (Tr. 45.) He declined to opine regarding the marked limitation assessed by Dr. Islam-Zwart, stating that his review of the entire record led him to opine that Plaintiff "had some moderate difficulties in tolerating workplace pressures, in particular interpersonal relationships." (Tr. 47-49.)

The ALJ gave significant weight to Dr. Mabel's testimony. (Tr. 21.) However, this non-examining psychologist testimony, based on a review of the record, is not substantial evidence to reject Dr. Islam-Zwart's opinions, which were based on an interview and objective testing. *Lester*, 81 F.3d at 831. Further, the ALJ erred when he did not identify other evidence in the record, from

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

examining or treating medical sources, that supports the limitations assessed by Dr. Mabel. (*Id.*)  The ALJ's evaluation of Dr. Islam-Zwart's opinions and reliance on Dr. Mabel's testimony are based on legal error and cause for remand. *See Lester*, 81 F.3d at 831-32.

**B.    Step Four - RFC Findings and Past Relevant Work**

At step four, the Commissioner makes RFC findings, and determines if a claimant can perform past relevant work.  Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. *Social Security Ruling (SSR)* 82-62.  This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  The Commissioner has defined the RFC as is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," *i.e.*, for eight hours a day for five days a week, or an equivalent work week. *SSR* 96-8p. Past relevant work is work performed in the last 15 years, lasted long enough to learn it and was substantial gainful employment. *SSR* 82-61.  In a step four finding that an individual has the capacity to perform a past relevant job, the decision must contain among the findings the following specific findings of fact:

1.    A finding of fact as to the individual's residual functional capacity;

2.    A finding of fact as to the physical and mental demands of the past job/occupation; and

3.    A finding of fact that the individual's residual functional capacity would permit a return to his or her past job or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

occupation.  *SSR* 82-62.

These findings must be based on the evidence in the record and must be developed and fully explained in the disability decision. Evidence of the physical and mental requirements of a particular job may be found in the DICTIONARY OF OCCUPATIONAL TITLES, other administratively recognized publications, or vocational expert testimony.  *SSR* 82-61.  Vocational experts are used most often at an ALJ hearing.  *SSR* 00-4p.  Step four requires specific findings on all three points sufficient "to insure that the claimant really can perform his past relevant work."  *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001); *see also SSR* 00-4p.

At the hearing, the VE testified that based on the written record and Plaintiff's hearing testimony, Plaintiff had past relevant work as a home health aide, psychiatric aide and child monitor.  (Tr.  73, 186.)  Based on the hypothetical individual described by the ALJ, the VE testified the individual could perform the home health aide and child monitor job.  (Tr. 76.)  The ALJ found Plaintiff could still perform these jobs.  (Tr. 23.)  However, the ALJ made no findings regarding the mental demands of these jobs, both of which are classified as "medium work," and require consistent interaction with either elderly, convalescent or handicapped adults or small children.  *Dictionary of Occupational Titles* (*DICOT* ), 4th ed., rev. 1991, 354.377-014, 301.377-010.  The ALJ's failure to provide detailed step four findings, including an explanation of (1) the mental demands of a claimant's past work with children and the elderly, and (2) how the identified mental limitations would impact her ability to meet these demands, is

1  reversible error.[3]  *See Pinto*, 249 F.3d at 845.

2      In addition, the ALJ erred when he relied on the VE testimony
3  regarding past work. Specifically, the ALJ's hypothetical did not
4  include the moderated and marked limitations assessed by Dr. Islam-
5  Zwart's and unrejected by the ALJ.   Failure to include all
6  unrejected limitations supported by the record is reversible error.
7  *See Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir. 1989); *Embrey v.*
8  *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (VE testimony has no
9  evidentiary value if hypothetical question is not supported by
10  substantial evidence).  It is also noted that the ALJ's hypothetical
11  question to the VE described an individual with moderate limitations
12  in her ability to work "in coordination with or proximity to others
13  without being distracted by them, or in terms of exhibiting
14  behavioral extremes," and who could work "with the general public on
15  a brief basis." (Tr. 75.)  There is no explanation in the ALJ's
16  decision as to how an individual with these mental limitations would
17  retain the ability to monitor children or care for the elderly,
18  handicapped or convalescing population, as the job is described in
19  the *DICOT*.

20      The ALJ's reliance on the VE testimony based on an incomplete
21  hypothetical is legal error, and his findings at step four that
22  Plaintiff can still do her past work, are not supported by
23  substantial evidence.

24      Finally, the medical evidence indicates Plaintiff's cervical
25  _____

26      [3]  The regulations advise the ALJ to consider first how a job
27  is actually performed based on and, then, how a job is usually
28  performed as defined by the *DICOT*. *SSR* 82-61.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

spine degenerative arthritis is marked and severe, and the record shows that Plaintiff reported chronic neck pain and headaches. (Tr. 360-61, 363.) Because Plaintiff's past work is performed at medium exertion, the ALJ's step four findings assume Plaintiff still has the ability to exert 20 to 50 pounds of force. *DICOT* 354.377-014, 301.377-010; *SSR* 83-10. However, the ALJ acknowledged in his decision that the record was inadequate to evaluate evidence of physical impairments. (Tr. 18.) The Regulations provide that a consultative examination is normally required where "there is an indication of change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established." 20 C.F.R. §§ 404.1519a(b)(4) and (5); 416.919(b)(4) and (5). Thus, the ALJ erred in not obtaining a consultative physical examination to assess the degree of exertional limitation caused by the medically determinable severe degenerative disk disease, and factor those results into his RFC determination. The ALJ's failure to develop the record further is cause for remand. *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir. 2001) *(citing Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001)).

**C.    Remedy**

Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand for additional proceedings is the proper disposition. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). Further, remand for additional proceedings is proper where, as here, there are issues that must be resolved relating to Plaintiff's exertional capacity; the record must be developed further; and step five findings may be necessary. *See Smolen v. Chater,* 80 F.3d 1273, 1291-92 (9th Cir. 1996).

1  Accordingly,

2      **IT IS ORDERED:**

3      1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is

4  **GRANTED** and the matter is remanded to the Commissioner for

5  additional proceedings consistent with the decision above and

6  pursuant to sentence four of 42 U.S.C. § 405(g);

7      2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is

8  **DENIED;**

9      3.   Application for attorney's fees may be filed by separate

10 motion.

11     The District Court Executive is directed to file this Order and

12 provide a copy to counsel for Plaintiff and Defendant. Judgment

13 shall be entered for **PLAINTIFF** and the file shall be **CLOSED.**

14     DATED October 29, 2009.

15

16          _____
                  S/ CYNTHIA IMBROGNO
17             UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 14